■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RAFAEL TORRES, Appellant. — Judgment, Supreme Court, Bronx County (Alvin Schlesinger, J.), rendered on April 24, 1980, affirmed. Concur — Asch, Fein and Milonas, JJ.

Carro, J. P., dissents in a memorandum as follows: With all respect, I cannot in good conscience vote to affirm the conviction of a teenager with an I.Q. in the 40's and a functional literacy of age 6½, no matter how tragic the consequences of his behavior.

In addition, I must protest the improprieties of the District Attorney's office, which contributed significantly to the denial of youthful offender treatment. The stigma to both defendant and our system of justice is insupportable and we should remove it by vacating this judgment and adjudicating defendant a youthful offender.

The crime occurred in November of 1978, when Torres and his codefendant were 14 years old. The two boys were out at night, "hanging out", smoking cigarettes, and looking for a car to steal and go joyriding. The other boy was chilly; they decided to take a coat from the basement of a building where a friend lived. The basement was dark so the boys rolled up some paper and lit it as a torch. Finding a jacket, they dropped the torch — and left. Outside, Torres asked the other child if he had stamped the paper out completely. That boy replied, "Fuck it." The boys went off to the park and when they returned, the building was ablaze.

Seven people died in that fire, five of them under the age of 18. Tragic is not an adequate word for it. There was, naturally, quite a bit of publicity at the time, and when the two boys were arrested but a few days later, the case received further attention since the two youths were the first juveniles to be charged as adults with murder under a new statute.

Extensive pretrial proceedings, however, revealed that both boys were of subnormal intelligence. Defendant's counsel served notice of his intention to pursue a defense based upon "evidence of mental disease or defect of the defendant excluding criminal responsibility under section 30.05 of the Penal Law." Defendant was examined by both a clinical child psychologist and a pediatric neurologist.

Ultimately the People consented to a plea bargain whereby defendant would plead guilty to one count of burglary in the first degree, in satisfaction of the entire indictment charging him with 14 counts of murder in the second degree and 7 counts of first degree burglary. No sentence promise was made and the District Attorney assured the court that he would take no position on what the proper disposition by the court should be.

However, in October of 1979 the court informed both sides that it had read a *New York Times* article, quoting a spokesman from the District Attorney's office, to the effect that the plea was agreeable to that office because it guaranteed a prison term. The Assistant District Attorney denied any knowledge of such a statement.

Presentence hearings were then conducted, with the clinical psychologist testifying that Torres had a moderately severe mental deficiency associated with organic brain dysfunction.

Defendant's I.Q. scores were all in the 40's, he was unable to read and could only write two letters, and his performance on tests equated to that of a normal 6 to 6½ year old.

The probation report dated January 15, 1980 — some 10 pages long — echoed the psychiatrist's evaluation and recommended adjudicating defendant a youthful offender. Sometime later, however, the District Attorney's office contacted the supervising probation officer and that recommendation was subsequently changed via an "updated" probation report counseling against youthful offender treatment. Asked by the court, at the time of sentencing, to explain, the probation officer was unable to satisfactorily account for his discrepant actions.

Lastly, at time of sentence the prosecutor stated that though the People had agreed to abstain from making a sentence recommendation, he nonetheless wanted to "point out" various factors which the court should consider before imposing a sentence, including the Probation Department's revised recommendation against youthful offender treatment.

While the adjudication of youthful offender is not a constitutional or statutory right, but, rather, a matter for the sound discretion of the court (*People v Drayton,* 39 NY2d 580), the court here was presented with all of those factors which make it appropriate to exercise this discretion. The court's own recitation of the situation indicates that the court was fully aware of this. Yet still, a youthful offender adjudication was denied and an adult sentence imposed.

Thus, it seems apparent that the thinly veiled politicking by the District Attorney's office improperly interfered with the court's exercise of its discretion. As the People concede in their appeal brief, "[y]outhful offender treatment is intended for those young adults whose criminal acts may be characterized as 'hasty and thoughtless, rather than intentional or calculated.' *People v. Davis,* 81 A.D.2d 510, 511 (1st Dept. 1981)." I find it an abuse of discretion on our part, as well as the trial court, to allow the stigma of an adult violent felony conviction to remain upon this enfeebled young man, and especially distasteful is the onus of prosecutorial interference with the court's discretion in sentencing matters. (*Compare, People v Gottfried,* 94 AD2d 632, 634 [Carro, J., dissenting], and *People v Selikoff,* 35 NY2d 227, 241 ["Any attempt to undermine judicial control in the sentencing process must be rejected"].)