■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY CRAWFORD, Appellant. [989 NYS2d 606]—Judgment, Supreme Court, New York County (Arlene D. Goldberg, J.), rendered September 16, 2010, convicting defendant, upon his plea of guilty, of robbery in the first degree, and sentencing him, as a juvenile offender, to a term of 3 to 9 years, affirmed.

The court properly exercised its discretion in denying defendant youthful offender treatment (*see People v Drayton*, 39 NY2d 580 [1976]), particularly since, while awaiting sentencing, defendant failed to comply with a treatment program and committed another armed robbery. We perceive no basis for reducing the sentence. Concur—Tom, J.P., Renwick, Andrias and Clark, JJ.

---

4. Defendant makes no other complaints on appeal about the grand jury presentation.

Freedman, J., concurs in part and dissents in part in a memorandum as follows: I write separately because I believe the current law that allows 15 year olds to be tried as adult criminals, even though they are sentenced as juvenile offenders, belies everything science has taught us about the functioning of the juvenile brain (*People v Rudolph*, 21 NY3d 497, 506 [2013, Graffeo, J., concurring]). For that reason, I would reduce the sentence to 2 to 6 years to be served concurrently with the five-year term of defendant's Kings County sentence, but would not accord defendant the youthful offender treatment that he seeks.

Defendant, age 15, pleaded guilty to robbery in the first degree. At the direction of his older brother, he committed a robbery brandishing a steak knife and taking two cell phones and five dollars from two other youths in October 2008. By letter dated February 10, 2009, counsel informed the court that defendant had been adjudicated a juvenile delinquent in Kings County Family Court on unrelated charges and placed with Office of Children and Family Services for a 12-month residency in Children's Village. The letter also informed the court that defendant wished to plead guilty on the October 2008 indictment, and be released for placement at Children's Village.

The letter also detailed the facts of defendant's horrendous childhood. At age four, he was removed from his mother because of emotional neglect and exposure to extreme domestic violence. He was placed with a physically abusive grandmother, and did not develop verbal skills until age 5$^1$/2. By age seven, after having been returned to his mother, defendant had to be treated with psychotropic medications. He then underwent a number of psychiatric emergency room admissions and was placed in a special education class after the Department of Education designated him as being emotionally disturbed and of low intelligence. At age 10, he was again hospitalized on an emergency basis, removed from his home because of abandonment, and then placed by Administration for Children's Services in the Pleasantville Cottage School and Diagnostic Center for two years. He was diagnosed as bipolar but again returned to his mother. At the time of his arrest, he was living with his mother and older brother in a shelter for domestic violence victims having been recently released from another hospitalization. His older brother regularly beat or threatened to beat him if he did not engage in criminal behavior including the particular crime for which he was arrested.

At the time of his plea to the class B violent felony in the instant matter, Supreme Court advised defendant that his sentencing was being held in abeyance so he could begin

residency at Children's Village and if he complied with rules and committed no further crimes, he would be given youthful offender treatment and five years' probation. He was also advised that if he violated these conditions, he would not receive youthful offender treatment and would be sentenced as a juvenile offender to 3 to 10 years.

At some point, Children's Village released defendant to spend a weekend with his mother and brother. They did not return him to Children's Village, and he committed a robbery in Kings County at gunpoint, also accompanied by and at the direction of his brother.

Defendant never returned to Children's Village and was sentenced in the instant case to a term of 3 to 9 years on September 16, 2010, one year less than the maximum for a class B felony under Penal Law § 70.05. Although defense counsel sought youthful offender treatment and minimum sentence of $1^{1}/_{3}$ to 4 years, that application was denied because defendant had failed to comply with the conditions set by the court. Defendant was shortly thereafter sentenced to five years for the Kings County robbery to be served concurrently with the 3 to 9 years in the instant case.

In the 2010 presentence report in the instant matter, the probation department stated that defendant "would benefit from a mental health evaluation and a residential mental health treatment program." However, the court sentenced him to 3 to 9 and denied youthful offender treatment. In pronouncing sentence here, the court noted that defendant had "a very sad life," but since he "violated every condition" a sentence near the maximum without youthful offender treatment was warranted.

The differences between juvenile and adult criminals were highlighted by the United States Supreme Court in *Graham v Florida* (560 US 48, 68 [2010] ["(a)s petitioner(s) . . . point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence" and "(a)s compared to adults, juveniles have a ' "lack of maturity and an underdeveloped sense of responsibility" ' . . . Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults," quoting *Roper v Simmons*, 543 US 551, 569, 570 (2005)]; *see also People v Rudolph*, 21 NY3d at 506).

Although I believe the trial court did not abuse its discretion in denying youthful offender treatment based on the subsequent

robbery, I would reduce the sentence, as stated above, in the interests of justice so that both of defendant's prison terms are coextensive as well as concurrent. Defendant's disastrous childhood, together with the evil influence of his older brother, mitigates strongly against an extended a period of incarceration. Having already fallen through society's cracks, both defendant, who readily admitted his guilt, apologized for his actions, and did not hurt anyone, and society would be far better served by a positive intervention and rehabilitation program than by an extended prison sentence. I note that in *People v Kwame S.* (95 AD3d 664 [2012]), even where a young offender convicted of robbery in the first degree was arrested for subsequent crimes, this Court reduced the sentence for the robbery conviction from five years to 1⅓ to 4 years, and adjudicated him a youthful offender. Defendant should now be given the opportunity to change that *Roper v Simmons* (543 US 551 [2005]) espouses.